## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Joseph E. Glaum, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | Case No. 1:24-cv-146 |
| | ) | |
| Colby Braun, Warden Joseph Joyce, | ) | |
| Deputy Warden Shaun Fode, | ) | |
| Cassandra Upton, Tammy Homan, | ) | |
| Lacey Fischer, Heather Davis, | ) | |
| Brandon Gumke, and Kristin Heath, | ) | |
| | ) | |
| Defendants.[1] | ) | |

Plaintiff, Joseph E. Glaum, a prisoner proceeding without counsel and in forma pauperis, seeks to bring suits against Defendants, who are officials and employees of the North Dakota Department of Corrections and Rehabilitation (DOCR). Glaum has consented to the exercise of jurisdiction of a magistrate judge. (Doc. No. 7). Under 28 U.S.C. § 1915A, prior to service on defendants, the court must screen a prisoner's complaint that seeks redress from a governmental entity or its employees. If the court determines the action is frivolous, malicious, fails to state a claim, or seeks monetary relief from a defendant immune from such relief, the court must dismiss the complaint.

---

[1] Though Glaum lists the DOCR and NDSP in his caption, Glaum did not identify those entities as Defendants in either the Complaint or Amended Complaint. (Doc. No. 6 at 3-5; Doc. No. 24 at 2-3). Even if he had, states and state agencies, like the DOCR, are not "persons" amenable to suit under 42 U.S.C. § 1983 because they are entitled to Eleventh Amendment immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); see also Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000). The State of North Dakota has not waived its Eleventh Amendment immunity. See N.D. Cent. Code § 32-12.2-10. Furthermore, NDSP is a building, not a suable entity. Owens v. Scott Cnty. Jail, 328 F.3d 1026, 1027 (8th Cir. 2003) (concluding a jail is not a "person" amenable to suit); Accordingly, the Clerk is directed to terminate the DOCR and NDSP as Defendants.

## I.    <u>PROCEDURAL BACKGROUND</u>

Glaum submitted a Prison Litigation Reform Act (PLRA) packet and a motion to proceed in forma pauperis on July 30, 2024. (Doc. Nos. 1, 2). The Court granted IFP status and Glaum's complaint was filed. (Doc. Nos. 4, 6). On September 9, 2024, prior to screening the complaint, Glaum requested an extension of time to submit an amended complaint. (Doc. No. 14). The Court granted the motion and specifically advised Glaum that "an amended complaint **completely replaces** the original complaint" and would "supersede, not supplement, his current complaint." (Doc. No. 17 at 1).

On October 10, 2024, Glaum requested a second extension to submit an amended complaint and further requested the Court certify a class action and appoint qualified counsel to represent the class. (Doc. No. 18). Shortly thereafter, Glaum requested a stay while he considered whether to proceed with this action. (Doc. No. 20). The Court granted the request and stayed this matter until Friday, December 6, 2024. (Doc. No. 21). On December 11, 2024, Glaum submitted an incomplete prisoner litigation packet, which was returned to him. (Doc. No. 23). On December 26, 2024, Glaum filed an amended complaint. (Doc. No. 24). The Court lifted the stay on December 30, 2024, and denied the motion to certify a class and to appoint counsel. (Doc. No. 25).

On February 3, 2025, Glaum filed a notice of intent to supplement the amended complaint. (Doc. No. 30). The Court entered an order allowing a supplement. (Doc. No. 31). The supplement to the amended complaint was filed on March 5, 2025. (Doc. No. 34). The matter is now ready for initial screening under § 1915A.

## II.    <u>ALLEGATIONS OF AMENDED COMPLAINT</u>

Glaum primarily complains of interference with legal mail, lack of access to telephone and email communication with his father, William Glaum (William), who holds power of attorney

(POA), inability to use the telephone to contact potential witnesses for his state post-conviction relief proceedings, and inability to obtain and review recordings. (Doc. No. 24, ¶ 2). Glaum asserts Securus e-messages to his father have been delayed and blocked. Id. Glaum further alleges his ability to pursue other civil cases has been interfered with "through baseless targeted and malicious sanctions and claims of violation of facility policies." Id. Glaum alleges other prisoners face similar obstacles based on the DOCR's "unwritten custom/policy." Id. ¶ 3. Glaum identifies nine issues in the amended complaint. Id. at 3-9. The supplement alleges additional facts supporting some of the original issues and asserts several new issues for resolution. (Doc. No. 34 ¶¶ 7-9).

The issues alleged by Glaum can be grouped into eight types of claims. First, is a lack of access to court and interference with mail claim involving his underlying criminal conviction. (Doc. No. 24, ¶ 8; Doc. No. 34, ¶ 2). Second, is a lack of access to court and interference with mail claim involving other civil suits pending in state court involving Rebecca Woodrow and Michael Drake.[2] (Doc. No. 24 ¶¶ 8-12, 19-21; Doc. No. 34, ¶ 3). Third, is a claim of mail tampering. (Doc. No. 24, ¶ 13). Fourth, Glaum is claiming harassing disciplinary write-ups, denial of due process in the disciplinary hearings, and sanctions that denied him access to the library and computers. Id. ¶¶ 14-17. Fifth, Glaum complains he did not receive a response to a grievance he made against Unit Manager Lacey Fischer. Id. ¶ 18. Sixth, Glaum requests the Court to vacate a state court judgment because the judge refused to recuse herself. (Doc. No. 34, ¶ 7). Seventh, Glaum claims a new policy restricting case managers from printing docket reports for inmates is "direct and

---

[2] Glaum also claims interference with a federal case in the Eastern Division of the District of North Dakota. This court is familiar with that case. There, Glaum's suit claiming an illegal search was dismissed for failure to state a claim because it was apparent from all the information Glaum submitted that no Fourth Amendment violation had occurred. Glaum v. City of Emerado, No. 3:24-cv-10, Doc. Nos. 37, 38 (D.N.D. October 9, 2024.). The Eighth Circuit Court of Appeals summarily affirmed the district court's dismissal on March 14, 2025. See id. (Doc. No. 49). Glaum's assertion that NDSP's policies or officials interfered with pursuing that suit is meritless.

purposeful interference" with litigation and constructively denies him access to the courts. Id. ¶ 8. Eighth, is a claim for destruction of property. Glaum claims Deputy Warden Shaun Fode denied him two legal textbooks that were ordered by his father and asserts the books were destroyed while Glaum's appeal was pending. Id. ¶ 9.

For relief, Glaum seeks an injunction to compel Defendants to allow him to receive correspondence and publications from Cato Institute and to prohibit Defendants from interfering with his outgoing legal mail and other documents. (Doc. No. 24 at 26). Glaum requests "an injunction to relieve [him] from undue oppression, [and to] stop unjustified [d]isciplinary actions." Id. Glaum seeks additional access to computers or to purchase his own laptop computer and obtain USB thumb drives or DVD recordings for his case. Glaum also requests that NDSP place a copy machine in the prison library, provide legal topic-based books, and allow inmates to mail up to five envelopes a month at no cost. Id. Finally, Glaum demands reimbursement for the costs of litigating this case, an award for his direct and indirect losses from Defendants' interference in his other cases, and punitive damages of $300,000. Id.

## III.   STANDARD OF REVIEW

Under § 1915A, the court must review any complaint in a civil action brought by a prisoner against a governmental entity, officer, or employee. 28 U.S.C. § 1915(A). The court must identify any cognizable claims and dismiss any claim that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. See 28 U.S.C. § 1915A(b). The PLRA does not impose any heightened pleading requirements. To state a cognizable claim, the complaint need only meet the requirements of Fed. R. Civ. P. 8(a)(2) that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).

The court liberally construes a pro se complaint and holds it to a less stringent standard. See, e.g., Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008); Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015) ("When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.") (internal quotation marks omitted)). This does not mean that a pro se litigant is excused from satisfying the plausibility standard established in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (Twombly) and further amplified by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) (Iqbal). See Story v. Foote, 782 F.3d 968, 969 (8th Cir. 2015); see also Denton v. Hernandez, 504 U.S. 25, 31-33 (1992) (courts may disregard factual allegations that are clearly baseless, fanciful, fantastic, or delusional); Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992) (citing Nietske v. Williams, 490 U.S. 319, 325 (1989), for the proposition that a complaint is frivolous if it lacks an arguable basis in fact or is based on an indisputable meritless legal theory).

While the pleading requirements under Rule 8(a)(2) are not great, something more is required than simply expressing a desire for relief and declaring an entitlement to it. See Twombly, 550 U.S. at 555 n.3. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Id. at 555. Under the Twombly/ Iqbal plausibility standard, the complaint must provide enough factual matter which, accepted as true, states a claim that is plausible on the face of the allegations. A claim crosses the threshold when the factual allegations do more than merely create a suspicion of a legally cognizable action and "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Complaints that offer nothing more than labels and conclusions or a formulaic recitation of the elements are insufficient. Twombly, 550

5

U.S. at 555; Iqbal, 556 U.S. at 680-81. Though a pro se litigant's complaint is entitled to a liberal construction, the minimal pleading requirements of Twombly/Iqbal must still be satisfied. E.g., Story v. Foote, 782 F.3d 968, 969 (8th Cir. 2015).

Determining whether a complaint states a plausible claim is a "context specific" task that requires the court "to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those [alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). A liberal construction of a pro se pleading does not require a court to supply missing facts from a complaint. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). And the court is not required to ignore facts pled by a plaintiff when those facts undermine their claims. Corman v. Sullivan, No. 3:14-cv-32, 2015 WL 3676634, at *3 (D.N.D. June 12, 2015) (citing Edwards v. Snyder, 478 F.3d 827, 830 (7th Cir.2007)) ("[A] plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery.").

## IV.    DISCUSSION

Glaum brings this suit under 42 U.S.C. § 1983 and alleges a § 1985 conspiracy. (Doc. No. 24, ¶ 5). Section 1983 is not itself a source of substantive rights. To adequately state a § 1983 claim, a plaintiff must allege facts showing (1) a violation of a right secured by the Constitution or the laws of the United States and (2) the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157 (8th Cir. 1997).

### A.    Section 1985 Conspiracy

Before turning to the § 1983 claims, the Court addresses the conspiracy claim under 42 U.S.C. § 1985. Section 1985 is a post-Civil War statute that generally proscribes private

6

conspiracies to interfere with the civil rights of others.[3] Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1429 (8th Cir. 1986). Importantly, a racial or class-based discriminatory animus is an element of a § 1985 civil rights conspiracy claim. Federer v. Gephardt, 363 F.3d 754, 758 (8th Cir. 2004) (citing Griffin, 403 U.S. at 102). Because no racial or class-based allegations are present here, this claim is dismissed. See Schuh v. Burgum, No. 1:24-cv-1, 2024 WL 2785309, at * 19 (D.N.D. April 29, 2024) (dismissing § 1985 claim for failure to allege a plausible conspiracy based on a racial animus) report and recommendation adopted 2021 WL 2781120 (D.N.D. May 30, 2024).

### B.    Official Capacity Claims

Glaum seeks to sue the Defendants in their official and individual capacities. A suit against a state employee in their official capacity is a suit against the state. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). The State of North Dakota is entitled to Eleventh Amendment immunity from suits for money damages in federal court and has not waived that immunity. Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000); N.D. Cent. Code § 32-12.2-10. Because Glaum may not recover compensatory or punitive damages against North Dakota, its agencies, or any state employee in their official capacities, such claims for damages are dismissed. See Kentucky v. Graham, 473 U.S. 159, 169 (1985) (observing the Eleventh Amendment's bar on damages claims against a State in federal court "remains in effect when State officials are sued for damages in their official capacity"); Burke v. Beene, 948 F.2d 489, 492 (8th Cir. 1991) ("Eleventh Amendment jurisprudence is well-settled: 'a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh

---

[3] Subsection 3 allows for a claim of damages if "two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the law." 42 U.S.C. § 1985(3).

Amendment.'") (citation omitted); Nix v. Norman, 879 F.2d 429, 433 (8th Cir. 1989) (affirming dismissal of punitive damages claim against state employee sued in his official capacity based on Eleventh Amendment immunity).

### C.     Claims for Declaratory or Injunctive Relief.

Though an award of monetary relief is unavailable against Defendants in their official capacity, the Eleventh Amendment generally does not bar claims for prospective injunctive relief against public officials in their official capacities. Monroe v. Ark. State Univ., 495 F.3d 591, 594 (8th Cir. 2007). Under Ex Parte Young, 209 U.S. 123 (1908), a party may sue a state officer for prospective relief to stop an ongoing violation of a federal right. See Entergy, Arkansas, Inc. v. Nebraska, 210 F.3d 887, 897 (8th Cir. 2000) (observing that injunctive relief remains available against continuing violations of federal law) (citing Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269 (1997)).

To warrant injunctive relief, the plaintiff must show their constitutional rights have been violated and there is a cognizable danger of a future violation that is more than a mere possibility. Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982). The proper defendant when seeking injunctive relief is the person who would be responsible for carrying out the injunctive relief. Pouncil v. Tilton, 704 F.3d 568, 576 (9th Cir. 2012) (holding the proper state defendant in a § 1983 action seeking prospective injunctive relief is the person who "would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to [the plaintiff's] claims"); Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011) (stating prison warden was proper defendant for a claim of injunctive relief because he would be responsible for ensuring any injunction was carried out); McSwine v. Franks, No. 8:22CV30, 2022

WL 1203632, at *7 (D. Neb. Apr. 22, 2022). Glaum may be entitled to seek injunctive relief to the extent any of his claims state a plausible ongoing violation of his constitutional rights.[4]

###    D.    Interference with Mail Claims (Issues 1, 2, 3, 4, 5)

Turning to Glaum's § 1983 claims, the Court liberally construes his complaint as presenting several claims for interference with the free flow of mail. These claims fall into the general categories of incoming and outgoing mail. (Doc. No. 24, ¶¶ 8-9, 11-12).

A prisoner retains First Amendment protections to send and receive mail, but that right may be restricted for legitimate penological reasons." Wheeler v Sayler, No. 1:22-cv-038, 2023 WL 4565595, at *5 (D.N.D. June 5, 2023) report and recommendation adopted, 2023 WL 4562169 (D.N.D. July 17, 2023) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989) and Turner v. Safley, 482 U.S. 78, 89 (1987)). The First Amendment right to free flow of incoming and outgoing mail is in addition to the right of access to the courts. Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). Courts have "consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." Id. Legal mail is defined as "mail to or from an inmate's attorney and identified as such." Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Jensen v. Klecker, 648 F.2d 1179, 1182-83 (8th Cir. 1981). The mere fact that a letter comes from a legal source is insufficient to indicate that it is confidential and requires special treatment. Harrod v. Halford, 773 F.2d 234 (8th Cir. 1985). Whether a particular piece of mail is "legal mail" is a question of law. Moore v. Schuetzle, 486 F.Supp.2d 969, 987 (D.N.D. 2007).

---

[4] Courts proceed cautiously, however, when asked to interfere with the management of prisons through issuing injunctions. See Goff v. Harper, 60 F.3d 518, 520–21 (8th Cir. 1995).

1.    <u>**Restricting Mail**</u> **(Issues 1, 2, 3, 4).**

Turning first to the claims primarily involving mail restrictions, in Issues One and Four, Glaum asserts he is being denied correspondence, documents, pictures, and recording mailed by William.[5] (Doc. No. 24, ¶¶ 8, 9). Glaum alleges William has sent him documents related to several ongoing state cases. Because there is a policy against allowing prisoners to have original papers, Glaum claims he is being denied the documents that he needs for his pending cases. <u>Id.</u> ¶ 8. Glaum explains he was previously able to receive copies of these documents at a cost, but that ability has been suspended. <u>Id.</u> In a supplement, Glaum contends some of the denied documents contained information printed from internet resources that Glaum intends to use in an upcoming post-conviction action.[6] (Doc. No. 34, ¶ 2). Glaum requests an order compelling NDSP to produce the documents sent to him and "an injunction directing the responsible persons to stop interfering in Glaum's constitutionally protected right to access his own legal documents[,] the courts and legal affairs." (Doc. No. 24, ¶ 8).

Similarly, in Issue Two, Glaum asserts Defendants have prevented the exchange of correspondence, documents, pictures and audio recordings relating to his criminal appeal and various civil cases pending in state court. <u>Id.</u> ¶ 9. The distinction here is that Defendants are not allowing the correspondence because of a no contact order that is in place between Glaum and Rebecca Woodrow, a party to pending civil actions. Glaum asserts the state court judge has allowed communication between Glaum and Woodrow related to the pending cases, but

---

[5] The fact that William has power of attorney for Glaum does not provide any additional constitutional protections or transform correspondence between Glaum and William into legal mail. <u>Langford v. Dzurenda</u>, 2020 WL 6304205, at *3 (D. Nev. Mar. 23, 2020) (stating a power of attorney does not give rise to an attorney-client relationship with the attendant benefits of confidentiality and privilege afforded prisoners with respect to legal mail).

[6] Glaum does not assert he currently has a post-conviction action pending in state court.

Defendants have not followed the court's order. Id. Issue Three is similar, only this claim involves a civil suit with Michael Drake. Id. ¶ 11. Glaum claims management prevent him "from acquiring necessary documents, and obtaining appropriate means of communication in furtherance of this case without good cause[.]"

At this early stage, the Court is inclined to allow Glaum to proceed with a First Amendment free flow of mail claim. Generally, sporadic and short-term delays in receiving mail are insufficient to state a First Amendment claim. See Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir. 2000) (dismissing claim where plaintiff did not allege a continuing pattern or repeated occurrences of untimely delivered mail). Liberally construed, Glaum's allegations assert more than "sporadic" delays in the mailing system. Instead, his allegations involve NDSP policies that prohibit inmates from receiving original documents without satisfactory alternatives and intentional withholding of mail. It may be that there are legitimate penological reasons for these limitations, but the Court is unable to make that determination without further information. Accordingly, Glaum will be allowed to proceed with Issues One, Two, Three, and Four insofar as those relate to violations of the First Amendment right to free flow of mail.

## 2.    Mail Tampering (Issue 5)

Liberally construed, Glaum's complaint also alleges mail tampering in Issue Five. In one incident, Glaum alleges the intended contents of outgoing correspondence did not arrive to the recipient.[7] (Doc. No. 24, ¶ 13). Glaum claims he sent a subpoena with an attachment specifically

---

[7] That Glaum may have "received letters containing sensitive legal information from Verizon that arrived open" fails to state a claim. (Doc. No. 24, ¶ 13). Mail from Verizon, even if related to Glaum's legal claims, is not privileged, legal mail. Privileged mail is limited to "mail to or from an inmate's attorney and identified as such." Wolff, 418 U.S. at 576-77. NDSP is not precluded from opening non-legal mail outside the presence of an inmate. Id. at 574 (holding a prisoner's privileged mail may not be opened for inspection outside the presence of the inmate).

describing the requested information to Verizon. Id. Verizon later advised Glaum that it could not comply with the subpoena because it did not receive the attachment identifying the information he requested. Id. In another instance, Glaum alleges documents that were intended for META/Facebook were instead received by Verizon. Id. Glaum claims "this is solid evidence that the documents that were enclosed in the envelopes . . . were switched" after he put them into the prison's mail system.

A claim for mail tampering requires allegations of an ongoing practice of interference by prison officials. Davis, 320 F.3d at 351-52 (holding an isolated incident of mail tampering is usually insufficient to establish a constitutional violation); Simkins v. Bruce, 406 F.3d 1239, 1242 (10th Cir. 2005) (stating "when access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs."). Here, Glaum alleges two isolated incidents involving mail to Verizon, not an ongoing practice. Isolated incidents of mail tampering do not state a violation of First Amendment rights. Furthermore, neither of these mailings constitutes legal mail because they were not sent to Glaum's counsel. Jensen, 648 F.2d at 1182-83. Accordingly, Glaum's claim for mail tampering in Issue Five is dismissed for failure to state a claim.

###    E.    Lack of Access to Court Claims (Issues 1, 2, 3, 4, 9, 10)

The allegations in Issues One, Two, Three, Four, Nine, and Ten can also be liberally construed to assert Glaum has been denied the right of access to court. Glaum's allegations fall into three groups. First, is the alleged interference with his criminal case. (Doc. No. 24, ¶ 8 (referring to case #18-2021-CR-02314)). Second, is the alleged interference with several civil suits pending in state court. Id. ¶¶ 8-9, 12, 19-20. Third, is a claim that NDSP's policy precluding case

managers from printing docket reports constructively denies Glaum access to the courts. (Doc. No. 34, ¶ 8).

Prisoners have a constitutional right of meaningful access to the courts that is applicable to the states through the Due Process Clause of the Fourteenth Amendment. See Bounds v. Smith, 430 U.S. 817, 828 (1977); Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996). The Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828. However, there is no right to a law library or to legal assistance per se, only "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis v. Casey, 518 U.S. 343, 351, (1996) (quotation omitted).

In Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court curtailed the broad expression of rights found in Bounds. Drawing on principles of standing, the Court made clear that an inmate must show an actual injury resulted from the lack of access to courts. Lewis, 518 U.S. at 351. The actual injury requirement means the inmate must demonstrate that the prison's alleged shortcomings in providing a law library or other legal assistance hindered the inmate's ability to pursue a legal claim. Id. But not "just any type of frustrated legal claim" will satisfy the actual injury requirement. Id. at 354. The Supreme Court limited the right of access to court to claims involving "direct appeals from the convictions for which they were incarcerated," "habeas petitions," and "actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'" Id.

In Lewis, the Supreme Court firmly stated the right expressed in Bounds is limited and "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." Id. at 355.

An inmate does not have a right to "*discover* grievances, and to *litigate effectively* once in court." Id. at 354. The tools required by Bounds "are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Id. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id. at 355-56.

Since Lewis, the Eighth Circuit Court of Appeals has recognized the narrowing of Bounds "concerning the nature of the right and the requirements for relief." See Cody v. Weber, 256 F.3d 764, 767-67, 770 (8th Cir. 2001) (stating "Lewis limits the scope of the right of access to the courts to the filing of an action attacking a sentence or challenging the conditions of confinement). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim."[8] Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008) (quoting White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007)). "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" Zink v. Lombardi, 783 F.3d 1089, 1108 (8th Cir. 2015) (quoting Lewis, 518 U.S. at 356).

---

[8] The Court recognizes the Eighth Circuit adopted a broader expression of the right of access to the court in Schrier v. Halford, 60 F.3d 1309, 1313 (8th Cir. 1995), which held the right to meaningful access to the courts prohibits prison officials from erecting unreasonable barriers to pursuing all types of legal matters. The opinion in Schrier, however, predated the Supreme Court's decision in Lewis, which, as the Court has described, substantially limited the types of cases that satisfy the actual injury requirement. The Eighth Circuit has also seemingly walked back the broad expression in Schrier in its later opinions. See Zink, 783 F.3d at 1108; Hartsfield, 511 F.3d at 831; Kautzky, 494 F.3d at 680; Cody, 256 F.3d at 767-68.

This Court has dismissed access to court claims that did not satisfy the actual injury requirement announced in Lewis. See Wheeler v. North Dakota, No. 1:18-cv-265, 2019 WL 11662579, at *7 (D.N.D. July 26, 2019), report and recommendation adopted, 2019 WL 11663796 (D.N.D. Aug. 23, 2019), aff'd, No. 19-3027, 2019 WL 11662559 (8th Cir. Dec. 10, 2019) (dismissing lack of access to court claim during screening); Ireland v. Anderson, No. 3:13-cv-3, 2015 WL 12843962, at *4 (D.N.D. Dec. 8, 2015), report and recommendation adopted, 2016 WL 1170978 (D.N.D. Mar. 24, 2016) (granting motion to dismiss); Gordon v. Bertsch, No. 1:15-CV-026, 2015 WL 10319307, at *11 (D.N.D. Oct. 30, 2015), report and recommendation adopted, 2016 WL 676365 (D.N.D. Feb. 18, 2016) (dismissing claim); Fernandez v. North Dakota, No. 1:12-cv-161, 2014 WL 7409550, at *18 (D.N.D. Nov. 3, 2014) (granting summary judgment).

Applying the foregoing to Glaum's case, it is apparent none of his asserted lack of access to court claims survives screening. First, Glaum has not alleged to have suffered an "actual injury." In other words, he has not alleged facts to support that a nonfrivolous legal claim has been frustrated or impeded. See Entzi v. Redmann, 485 F.3d 998, 1005 (8th Cir. 2007) (stating there must be some evidence that conduct by prison officials adversely affected the outcome of a prisoner's litigation). Glaum makes general, conclusory statements that being denied access to certain correspondence, documents, pictures, and audio-recordings has hindered his access to court, but he fails to provide specific facts supporting any adverse action.[9] Conclusory allegations

---

[9] In his supplement, Glaum alleges a pending civil case was recently decided against him on summary judgment. (Doc. No. 34, ¶ 3, referring to case # 18-2023-CV-01919). Glaum attributes the loss of this case "to the interference of NDSP officials and denial of access to phone, documents, and electronically recorded information." Id. Glaum further describes the difficulties he had communicating with his father to gather information because of his disciplinary sanctions. Id. Glaum intends to appeal that decision. Without deciding whether such assertions would be sufficient to show a nonfrivolous legal claim has been hindered, the case referred to is a civil foreclosure case, which does not come within the protections of Lewis.

are insufficient to state a plausible claim. Iqbal, 556 U.S. at 678. This rationale also applies to Glaum's complaint that case managers are no longer allowed to print case dockets for inmates. Glaum does not allege a nonfrivolous legal claim has been frustrated or impeded by the inability to obtain case dockets. (Doc. 24, ¶ 8).

Second, any impediments or difficulties Glaum has in pursuing his pending civil cases are "incidental and perfectly constitutional consequences of conviction and incarceration." Lewis, 518 U.S. at 355 (punctuation altered). The holding in Lewis is clear that not just any type of frustrated claim satisfies the actual injury requirement. Id. at 354. Only claims involving direct or collateral attacks on the inmate's conviction or § 1983 actions to vindicate basic constitutional rights are sufficient. Id. at 354. The right of access does not extend to "any *other* litigating capacity." Id. at 355. Thus, whether Glaum has been hindered in pursuing general civil actions is of no constitutional significance. Accordingly, the Court dismissed Glaum's claims for lack of access to courts for failure to state a plausible claim.

### F.    Disciplinary Write-Ups (Issues 6 and 7)

Next, Glaum alleges he has been subjected to harassing disciplinary reports without just cause. (Doc. No. 24, ¶¶ 14, 15). The law does not generally protect inmates from harassing conduct in prisons. For instance, taunts, name calling, and the use of offensive language do not state a claim of constitutional dimension. McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993) (holding inmate's claims of general harassment and of verbal harassment were not actionable under section 1983); O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987) (concluding verbal threats and abuse by jail officials did not rise to the level of a constitutional violation). Furthermore, "[t]he

filing of a false disciplinary charge is not itself actionable under § 1983."[10] <u>Dixon v. Brown</u>, 38 F.3d 379, 379 (8th Cir. 1994). The allegations of harassing disciplinary actions do not alone state a claim. <u>Sprouse v. Babcock</u>, 870 F.2d 450, 452 (8th Cir. 1989) (holding claims based on falsity of disciplinary charges, standing alone, do not state constitutional claims). Thus, Glaum will not be allowed to proceed with a claim of harassing disciplinary reports.

Glaum also asserts his Fourteenth Amendment due process rights were violated during his disciplinary hearings. (Doc. No. 24, ¶¶ 14, 15). In one incident, Glaum was found to have committed a violation and disciplined with a loss of good time credits, preferred housing, and phone privileges, among others. <u>Id.</u> ¶ 14. He claims while presenting his legal arguments during the hearing, the hearing officer, Heather Davis, abruptly left without allowing him to finish. <u>Id.</u> Glaum also claims he was not allowed to present witnesses or have a legal representative attend the hearing. <u>Id.</u>

In a second incident, Glaum received a Level II write up for allegedly working on another inmate's legal case. <u>Id.</u> ¶ 15. Glaum denied the allegation and claimed he was working on his own legal matters. During the disciplinary hearing, Glaum wanted the hearing officer, Lacey Fischer, to accompany him to the library so he could show her what he was working on and she refused. <u>Id.</u> Glaum was found to have committed a violation and disciplined with "additional loss of preferred housing, job, money, and other sanctions," including a three-week restriction on his

---

[10] Making a false disciplinary charge in retaliation for an inmate's exercise of a constitutional right is actionable. <u>Sanders v. Hobbs</u>, 773 F.3d 186, 190 (8th Cir. 2014). Though Glaum's supplement alleges prison "management is violating [his] rights and retaliating against him for bringing suit against [Woodrow]," this is a conclusory allegation that is insufficient to plausibly allege First Amendment retaliation. <u>See</u> <u>Nieves v. Bartlett</u>, 587 U.S. 391 (2019) (holding that to prevail on a First Amendment retaliation claim the plaintiff must establish the retaliatory motive is the "but-for" cause for the adverse action). (Doc. No. 34, ¶ 7). Glaum's conclusory assertion that prison officials are retaliating against him for bringing suits against Glaum's former-girlfriend borders on incredulity and frivolousness.

ability to use the library. Id.

A prisoner may maintain a due process challenge to a disciplinary proceeding only "if there is a recognized liberty or property interest at stake." Beaulieu v. Ludeman, 690 F.3d 1017, 1047 (8th Cir. 2012) (internal citations omitted). The ordinary incidents of prison life necessarily involve significant restrictions on liberty. Sandin v. Connor, 515 U.S. 472, 485 (1995) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.") (internal quotations omitted). The Supreme Court holds a prisoner has a protected liberty interest *only* in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. In other words, to warrant the protections of due process, a prisoner must suffer an atypical and significant hardship, even for prison life. Id. The Supreme Court's decision in Sandin makes clear that procedural due process protections, including the right to present witnesses and documentary evidence, do not apply if no liberty interest is at stake.

The sanctions suffered by Glaum for disciplinary violations do not constitute "atypical and significant hardship." Courts have held that placement in disciplinary segregation or administrative segregation, temporary loss of visitation rights, loss of contact visitation, and restrictions on exercise do not create an atypical and significant hardships under Sandin. See Phillips v. Norris, 320 F.3d 844, 846-47 (8th Cir. 2003) (collecting cases). The Eighth Circuit has specifically held that neither changes in housing status, such as demotion to segregation, nor loss of privileges, such as mail and telephone restrictions, state a due process violation claim. Smith v. McKinney, 954 F.3d 1075, 1082 (8th Cir. 2020) (holding a demotion to segregation or being deprived of commissary, phone, or visitation privileges do not involve atypical and significant hardships);

Thornsberry v. Barden, 854 Fed. App'x 105 (8th Cir. 2021) (per curiam) (concluding an inmate's "assignment to isolation, loss of privileges, and reclassification were insufficient to state a due process claim"); Driscoll v. Youngman, 124 F.3d 207 (8th Cir. 1997) (135 days in disciplinary and administrative segregation without "meaningful exercise, natural light, and adequate time in the library" did not constitute atypical and significant hardship); Kennedy v. Blankenship, 100 F.3d 640, 642-43 & n.2 (8th Cir. 1996) (thirty days suspension of mail, telephone, visitation and commissary privileges did not amount to atypical and significant hardship).

As to the loss of earned good time credits, Glaum may have been entitled to present witnesses at his disciplinary hearing. See Espinosa v. Peterson, 283 F.3d 949, 951 (8th Cir. 2002) (holding the loss of good time credits is a liberty interest protected by the Due Process Clause); However, Glaum may not seek reinstatement of good time credits in a § 1983 action. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (providing restoration of good-time credits must be sought in habeas corpus proceedings); Spencer v. Haynes, 774 F.3d 467, 469 (8th Cir. 2014) (stating property remedy for loss of good time credits is writ of habeas corpus); Franklin v. Fikes, No. 22-cv-646, 2023 WL 8720331, at *3 (D. Minn. Oct. 31, 2023) (stating a writ of habeas corpus under § 2241 is the appropriate vehicle to challenge the loss of good time for federal prisoner); Bruesch v. Flanagan, No. 1:12-cv-083, 2012 WL 3278881, at *2 (D.N.D. July 26, 2012) (holding inmate could not "sustain any claim relating to the alleged loss of good time under the guise of a § 1983 action"); Darby v. Schuetzle, No. 1:09-cv-004, 2009 WL 700631, at *4-5 (D.N.D. March 13, 2009) (stating the Heck bar would preclude a defendant from seeking restoration of his good time credits in a § 1983 action). Because Glaum failed to plead plausible § 1983 claims regarding his disciplinary actions and hearings, these claims are dismissed.

G.     **Failure to Respond to Grievance (Issue 8)**

Glaum filed a grievance against Lacey Fischer for allegedly viewing his legal work on an inmate computer. (Doc. No. 24, ¶ 18). Glaum objects that Warden Joyce did not respond to his grievance. As the Court has previously noted, complaints about a grievance process, in general, and the processing of grievances, specifically, do not rise to the level of a constitutional violation. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (holding a prison official's failure to process or investigate grievances, without more, is not actionable under § 1983); King v. Houston, 556 Fed. App'x 561, 563 (8th Cir. 2014) (holding allegations that prison officials did not adequately consider an inmate's grievance did not state a claim); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (opining the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state).

This Court has previously found similar claims of inaction on inmate grievances lacking. See Wheeler, 2023 WL 4565595, at *6 (dismissing claims that defendants failed to adequately grievances, failed to respond to his grievances, or other otherwise denied his grievances). Because there is no constitutionally created entitlement to grievance procedures or access to any such procedures voluntarily established by a state, courts routinely conclude that the denial of a grievance or an alleged failure to act on a grievance does not state a cognizable claim. Id.; see also Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002) (finding that a plaintiff failed to state First Amendment claims relating to his grievances "because defendants' denial of his grievances did not state a substantive constitutional claim"); see also Stallworth v. Wilkins, 802 Fed. App'x 435, 439 (11th Cir. 2020) (concluding prisoner's complaint that his grievances were not acknowledged or addressed by administrators  failed to state a constitutional claim); Grinter v. Knight, 532 F.3d 567, 576 (6th Cir. 2008) (The "denial of administrative grievances or the failure to act by prison

officials does not subject supervisors to liability under § 1983.") (internal quotation marks omitted); <u>Lee v. Mich. Parole Bd.</u>, 104 Fed. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."). The same analysis applies here, and, thus, this claim is dismissed.

### H.    Vacating a State Court Judgment

In a supplement to his complaint, Glaum asks the Court to vacate a state court judgment because the judge allegedly "violated his constitutional right to be heard by an impartial judge." (Doc. 34, ¶ 7). Glaum argues the state court judge should have recused herself based on a conflict of interest. <u>Id.</u> He alleges the judge had previously recused herself from other of Glaum's cases but failed to do so in <u>Woodrow v. Glaum</u>, Case No. 18-2024-CV-00872 (Grand Forks Cnty. 2024) and ruled against him.[11]

A federal court has no authority vacate a state court judgment under the <u>Rooker-Feldman</u> doctrine. The <u>Rooker-Feldman</u> doctrine establishes that, with the narrow exception of habeas corpus proceedings, inferior federal courts lack subject-matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." <u>In re Athens/Alpha Gas Corp.</u>, 715 F.3d 230, 234 (8th Cir. 2013) (quoting <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005)). The United States Supreme Court has exclusive jurisdiction over appeals from state court judgments. <u>See</u> 28 U.S.C. § 1257. A federal court has no authority to overturn a state-court decision except in the limited area of habeas corpus. Furthermore, the case Glaum refers to is currently on

---

[11] Documents in Glaum's state cases are public records that can be obtained on the North Dakota Supreme Court's website through the district court case search at https://www.ndcourts.gov/public-access.

appeal before the North Dakota Supreme Court. Woodrow v. Glaum, No. 20240201 (N.D. July 29, 2024). The North Dakota Supreme Court is the appropriate forum for Glaum's challenge to the state court judgment.

## I.    Denial of Property Without Due Process (Issue 11)

Issue Eleven involves the denial of two legal books William ordered and had sent to NDSP for Glaum. (Doc. No. 34, ¶ 9). Deputy Warden Fode allegedly denied Glaum the books because they were used, not because of the content. Id. at 5. Glaum appealed the denial, and the books were disposed of while his appeal was pending. Glaum learned the books were disposed of consistent with a 30-day limit for storing denied materials. Id. Glaum claims that when an inmate timely appeals a denial, the item is supposed to be held until a final decision is made. Id. at 5-6.

The court liberally construes this claim as asserting a violation of procedural due process.[12] Prisoners are entitled to protections of the Fourteenth Amendment's Due Process Clause and may not be deprived of liberty or property without due process of law. See Sandin, 515 U.S. at 485. This claim involves a property interest, not a liberty interest. When state law provides an adequate post-deprivation remedy for the loss of property, like state tort remedies, a § 1983 action may not be maintained. Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding intentional deprivations of property do not violate due process when a meaningful state post-deprivation remedy is available); Reese v. Kennedy, 865 F.2d 186, 187 (8th Cir. 1989) (holding the availability of state tort remedies satisfies the requirements of procedural due process); Harris v. St. Louis Police Dep't, 164 F.3d 1085, 1086 (8th Cir. 1998) (holding a § 1983 claim cannot be asserted where an adequate post-

---

[12] Again, the alleged failure to follow a prison policy does not state a constitutional claim. Walker v. Bertsch, 745 Fed. App'x 664 (8th Cir. 2018) (per curiam) (stating "the grievance process does not give rise to a liberty interest requiring due process protections) (citing Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam)).

deprivation remedy for conversion exists in state court); McGrew v. Hasty, 2 Fed. App'x 616 (8th Cir. 2001) (per curiam) (holding adequate post-deprivation remedies existed under state law barring a § 1983 action to recover property).

North Dakota provides a remedy for the conversion of personal property. See N.D. Cent. Code § 32-03-23; Paxton v. Wiebe, 584 N.W.2d 72, 78-79 (N.D. 1998) (discussing tort of conversion). Because Glaum has an adequate post-deprivation remedy under state law, which he has not exhausted, his Fourteenth Amendment procedural due process claim for deprivation of property is dismissed.

**J.    Individual Capacity Claims**

A remaining issue involves Glaum's intent to sue Defendants in their individual capacity. "[Section] 1983 liability is personal[,]" not vicarious or group based. See Doran v. Eckold, 409 F.3d 958, 965 (8th Cir. 2005) (en banc), cert. denied, 546 U.S. 1032 (2005). To sue a § 1983 defendant in their individual capacity, plaintiff must allege facts that tend to show each defendant was personally involved in the alleged violation. See, e.g., Reynolds v. Dormire, 636 F.3d 976, 979 (8th Cir. 2011); Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (observing that any governmental official is liable only for his or her own misconduct). The alleged facts must explain how each defendant was involved in or directly responsible for the deprivation of plaintiff's constitutional rights. Jones v. City of St. Louis, 104 F.4th 1043, 1049 (8th Cir. 2024). General references to defendants collectively are insufficient to allege individual liability. Further, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995).

The only claims surviving screening are those asserting First Amendment free flow of mail claims, Issues One, Two, Three, and Four. Glaum's complaint largely refers to Defendants generally and collectively rather than setting forth specific facts showing personal involvement by each Defendant. For instance, Glaum claims the "above-named individuals here have prevented Mr. Glaum from timely receiving his physical correspondence[.]" (Doc. 24, ¶ 8). In another example, Glaum asserts "[t]he above captioned named defendants are the persons responsible for preventing Mr. Glaum's mail from getting to him[.]" Id. ¶ 9. There are other similar broad, general allegations. See id. ¶¶ 2, 11, 12. While there are occasional exceptions involving the actions of Deputy Warden Fode, those allegations are insufficient to support a plausible claim of individual liability for a violation of Glaum's constitutional rights. See id. ¶ 8 (asserting Fode rejected some documents sent by William Glaum). Thus, Glaum will not be allowed to proceed with individual capacity claims.

**Any other claim that is mentioned in the Complaint or Supplement to the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pleaded under Twombly/Iqbal.**

## V.    CONCLUSION

In accordance with the above, the claims for money damages and punitive damages against the Defendants in their official and individual capacities are **DISMISSED**. Glaum is permitted to proceed to obtain **injunctive relief only** with a First Amendment claim for interference with free flow of mail against Director Colby Braun and Warden Joseph Joyce in their official capacity. All other claims are **DISMISSED.**

The Court directs the Clerk of Court to terminate Defendants Shaun Fode, Cassandra Upton, Tammy Homan, Lacey Fischer, Heather Davis, Brandon Gumke, and Kristin Heath.

The Clerk's office is directed to serve a copy of the Amended Complaint (Doc. No. 24), the Supplement to the Amended Complaint (Doc. No. 34), this Order, and the Notice of Lawsuit and Request to Waive Service of Summons forms upon Defendants Colby Braun and Joseph Joyce.

**IT IS SO ORDERED.**

Dated this 9th day of April, 2025.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court