# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Joseph E. Glaum, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | Case No. 1:24-cv-146 |
| | ) | |
| Colby Braun and Joseph Joyce, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Joseph E. Glaum, an inmate proceeding without counsel, was permitted to proceed with First Amendment claims alleging (1) interference with free flow of mail while incarcerated, and (2) lack of access to the courts. (Doc. 38 at 24; Doc. 51 at 10). The claim for lack of access to the courts was limited to Glaum's effort to seek postconviction relief in state court. The permitted claims were limited to obtaining injunctive relief against Defendants, Colby Braun, the Director of the North Dakota Department of Rehabilitation and Corrections (DOCR), and Joseph Joyce, the Warden of North Dakota State Penitentiary (NDSP), in their official capacities.

Pending before the Court are cross-motions for summary judgment. Defendants filed a motion seeking summary judgment on August 11, 2025. (Doc. 69). Glaum filed a summary judgment motion on September 23, 2025. (Doc. 75). Because Defendants have shown Glaum's constitutional rights have not been violated and Glaum fails to raise a genuine issue of material fact for trial, the Court grants summary judgment to Defendants and denies Glaum's motion for summary judgment.

## I.    SUMMARY JUDGMENT STANDARD

Under Rule 56, summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, indicates no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Whitworth v. Kling, 90 F.4th 1215, 1217 (8th Cir. 2024). The movant is entitled to summary judgment "when the plaintiff has failed to make a sufficient showing of the existence of an essential element of [their] case." Id. (citations omitted). Summary judgment is not appropriate when there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

On cross-motions for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and give the nonmoving party the benefit of all reasonable inferences. Brands Int'l Corp. v. Reach Co., LLC, 103 F.4th 501, 504 (8th Cir. 2024). A reasonable inference is one that can be drawn from the evidence without resort to speculation. Turner v. XTO Energy, Inc., 989 F.3d 625, 627 (8th Cir. 2021). The court's function is to determine whether there is a genuine dispute about a material fact and decide whether the evidence is so disputed that a jury must decide the case or if it is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must "demonstrate the absence of a genuine issue of material fact." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The non-moving party "may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in [their] favor." Turner v. Mull, 784 F.3d 485, 489 (8th Cir. 2015) (citation omitted); see also Fed. R. Civ. P. 56(c)(1).

2

The same standard applies to unrepresented litigants. Beck v. Skon, 253 F.3d 330, 333 (8th Cir. 2001) ("Like any other civil litigant, [pro se plaintiff] was required to respond to defendants' motions with specific factual support for his claims to avoid summary judgment."). Though an unrepresented plaintiff is entitled to a liberal construction of their pleadings, they must comply with substantive and procedural law, including the requirements of Rule 56. Quam v. Minnehaha Cnty. Jail, 821 F.2d 522 (8th Cir. 1987) (per curiam); Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984) (per curiam); see also Mathis v. Mathes, 170 F. App'x 985 (8th Cir. 2006) (per curiam) (holding pro-se litigant's bare assertions, without the support of exhibits, affidavits or sworn statements, do not establish a genuine issue of material fact).

## II.    BACKGROUND

Glaum is serving a sixty-year sentence with ten years suspended for two counts of gross sexual imposition of a minor victim under the age of fifteen. North Dakota v. Glaum, No. 19-2021-CR-02314, Index #252 (Grand Forks Cnty. Dist. Ct. May 12, 2023). Glaum entered Alford pleas to the charges. See id. While incarcerated, Glaum has attempted to litigate several civil cases in state and federal court, filed bankruptcy petitions, and filed for postconviction relief. His claims here arise out of the obstacles and limitations of litigating pro se while being a prison inmate. Further details are provided in the discussion of each claim, but, in general, Glaum contends NDSP's mail policies have interfered with his ability to pursue his civil suits in violation of his First Amendment rights to the free flow of mail and right to access the courts.

Defendants' motion contends that the undisputed evidence shows no violation of Glaum's constitutional rights, his mail is being properly handled, and he has not been denied access to the courts. (Doc. 69-1 at 1). Glaum's motion claims he is entitled to relief based on cases and news articles that he found in the Prison Legal News and Criminal Legal News produced by the Human

Rights Defense Center, and for arguments made in his opposition to Defendants' motion for summary judgment.[1] (Doc. 75 at 3). Glaum submitted an affidavit from another inmate, Sheldon Davis, regarding Davis's experience reviewing electronic criminal discovery in prison to bring his own postconviction relief action. (Doc. 77).

### III.    DISCUSSION

Glaum's suit was brought under 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights. To succeed on a § 1983 claim, a plaintiff must prove (1) a violation of a right secured by the Constitution or the laws of the United States and (2) the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157 (8th Cir. 1997). The second element is not at issue here.

### A.    Interference with Mail

A prisoner retains First Amendment protections to send and receive mail, but that right may be restricted by prisons regulations that are reasonably related to legitimate penological interests. Weiler v. Purkett, 137 F.3d 1047, 1050 8th Cir. 1998); Wheeler v Sayler, No. 1:22-cv-038, 2023 WL 4565595, at *5 (D.N.D. June 5, 2023) report and recommendation adopted, 2023 WL 4562169 (D.N.D. July 17, 2023) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989) and Turner v. Safley, 482 U.S. 78, 89 (1987)). Courts have "consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." Davis v. Goord, 320 F.3d 346, 351 (2nd Cir. 2003). Legal mail is defined in case law as "mail to or from an inmate's attorney and identified as such." Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Jensen v. Klecker, 648 F.2d 1179, 1182 (8th Cir. 1981). The mere fact that a letter

---

[1] Glaum's motion cites to Rule 12(b)(6) motions to dismiss and Rule 56. Because this case has passed the pleadings stage, Rule 12(b)(6) does not apply. The applicable standard is under Federal Rule of Civil Procedure 56, motions for summary judgment.

comes from a legal source is insufficient to indicate that it is confidential and requires special treatment. Harrod v. Halford, 773 F.2d 234 (8th Cir. 1985). Whether a particular piece of mail is "legal mail" is a question of law for the court, not a question of fact for a jury. Moore v. Schuetzle, 486 F.Supp.2d 969, 987 (D.N.D. 2007).

### 1.    *Incoming Mail*

Glaum argues NDSP's procedures for handling incoming mail violate his First Amendment rights. NDSP's incoming mail policy depends on whether the mail is personal or legal/official. (Doc. 69-1 at 3). In June 2021, NDSP began using Securus Technologies' Digital Mail Center (DMC) in Florida to process incoming personal mail. (Doc. 69-2 at 2). Each inmate is issued an electronic Securus tablet. When personal mail arrives at the DMC, it is opened, inspected for contraband, scanned and electronically uploaded to the inmate's tablet. Id. The purpose of this process is to prevent contraband from entering NDSP through the mail system, while allowing prisoners to receive personal correspondence. Id.

In contrast, legal mail and official mail may be sent directly to NDSP. Id. Upon arrival, such mail is opened and inspected for contraband in the prisoner's presence. The inmate may have a copy made of the legal or official mail but is not allowed to keep the original item. Id. NDSP's handbook defines legal mail as that which is "to or from licensed attorneys or a recognized prisoner legal advocacy group." (Doc. 69-4 at 3). Official mail is defined as that which is to or from elected federal, state or local officials, federal, state, and municipal courts, and the North Dakota Commission on Legal Counsel for Indigents, among others. Id.

Glaum is aware of the incoming mail policies and has been reminded on multiple occasions that personal mail must be sent to the DMC. (E.g., Doc. 69-2 at 2; Doc. 69-5 at 3, 6, 9-12). Glaum's father, William Glaum (William), has frequently sent mail pertaining to Glaum's civil suits directly

to NDSP, rather than the DMC. Because William is not an attorney, NDSP determined the mail was personal, not legal or official, and denied the mail. Id. The Court agrees with that determination. See Weiler, 137 F.3d at 1051 (holding regulations defining legal mail as correspondence only from an attorney, judge or elected official have been approved by the United States Supreme Court). Mail and packages "from a family member, not a person or entity specified in the rule [are] not legal mail." Id. Thus, mail from William, even if pertaining to legal matters, is not legal mail as defined by NDSP's policy or case law.

Nevertheless, William continued to send personal mail directly to NDSP. (Doc. 69-5 at 2-4, 6, 9-12, 14-15, 17-18, 21-23, 25-26; Doc. 69-6 at 4-5, Doc. 69-7 at 2, 26). When this occurred, the mailroom issued Glaum a notice of denied mail (NODM). See id. Glaum typically appealed the denial to Deputy Warden Sean Fode. See id. Though Deputy Warden Fode agreed with the reasons for denying Glaum's mail, he frequently allowed Glaum to have the documents copied at Glaum's expense. Id.; (see also Doc. 69-5 at 5). This pattern was regularly repeated. On occasion, however, Deputy Warden Fode did not offer Glaum the opportunity to have such documents copied. (E.g., Doc. 69-5 at 16; Doc. 69-7 at 3). In those instances, Deputy Warden Fode indicated Glaum could pay to have the misdirected documents sent to the DMC for processing, sent out to another individual, or destroyed. See id.

In addition to mail from William, Glaum contends NDSP improperly denied mail from Michael Drake. When this suit was initiated, Glaum was involved in a state-court breach of contract case with Drake.[2] See Glaum v. Drake, No. 09-2023-CV-04032, Index #1 (Cass Cnty. Ct.

---

[2] Documents in Glaum's state cases are public records that can be obtained on the North Dakota Supreme Court's website through the district court case search at https://www.ndcourts.gov/public-access.

Nov. 21, 2023) That case has since been resolved against Glaum. Id. at Index #70 (Cass Cnty. Ct. Dec. 4, 2024) aff'd No. 20250005 (N.D. June 18, 2025); see also Glaum v. Drake, 2025 ND 112.

The evidence shows Glaum was denied mail from Drake in December 2023, February 2024, November 2024, December 2024, and March 2025. (Doc. 69-5 at 20; Doc. 69-6 at 14, 31-34, 36; Doc. 69-7 at 18-19). Glaum received a NODM and filed a resident request with Deputy Warden Fode for each mailing. Like denied mail from William, Deputy Warden Fode typically agreed with the mailroom's conclusion, but he allowed Glaum an opportunity to have Drake's mail copied at his expense, sent to the DMC for processing, or destroyed. (See, e.g., Doc. 69-6 at 32, 34). Glaum usually opted to have the documents copied at his expense or sent to William. (Doc. 69-5 at 20; Doc. 69-6 at 14, 31-34, 36; Doc. 69-7 at 18).

Glaum contends NDSP's incoming mail policy violates the First Amendment.[3] In Turner v. Safley, 482 U.S. 78 (1987), the United States Supreme Court instructed courts to uphold prison regulations that burden constitutional rights so long as the regulations are "reasonably related to legitimate penological interests."[4] Id. at 89. This deferential standard of review ensures "prison administrators, and not the courts . . . make the difficult judgments concerning institutional operations." Id. (citation omitted). The reasonableness standard in Turner requires a court to consider four factors:

(1)    Whether the policy has a valid and rational connection to a legitimate governmental interest;

---

[3] Glaum cites Vogt v. Wetzel, 8 F.4th 182 (8th Cir. 2021) as support (Doc. 75 at 4). The issue in Vogt involved a prison policy to reject incoming mail that did not have a return address without notifying the prisoner of the rejection. The Eighth Circuit Court of Appeals held a rejection without notice policy violates procedural due process. Id. at 186-87. Here, Glaum does not contend NDSP failed to provide him notice of his denied mailed, and the record is replete with examples that he received notice when incoming mail was rejected. The Vogt opinion is inapposite.

[4] For purposes of these motions, the Court will assume NDSP's incoming personal mail policy burdens a constitutional right but does not hold the policy does so.

7

(2)    Whether alternative means are open to prisoners to exercise the asserted right;

(3)    What impact an accommodation of the right would have on guards and inmates and prison resources generally; and

(4)    Whether there are ready alternatives to the policy with a de minimis cost.

Schmitt v. Rebertus, 148 F.4th 958, 967 (8th Cir. 2025); Murchison v. Rogers, 779 F.3d 882, 887 (8th Cir. 2015).

The Turner standard applies only to rights that are inconsistent with proper incarceration. Schmitt, 148 F.4th at 967 (citing Johnson v. Calif., 543 U.S. 499, 510) (2005)). In other words, the standard applies to "rights that must *necessarily* be limited in the prison context." Id. (citation omitted). These include First Amendment challenges to "restrictions on freedom of association, limits on inmate correspondence, restrictions on inmates' access to courts, restrictions on receipt of subscription publications, and work rules limiting prisoners' attendance at religious services." Id. (citation omitted) (emphasis added).

The first Turner factor is a threshold condition the prison policy must satisfy to pass constitutional scrutiny. Schmitt, 148 F.4th at 967. Only if the policy has a valid and rational connection to a legitimate government interest does the court balance the remaining three factors to determine the policy's constitutionality. Id. "Generally, the prison bears the burden of proving the existence of a 'rational connection' between the challenged regulation and a legitimate government interest." Sisney v. Kaemingk, 15 F.4th 1181, 1190 (8th Cir. 2021).

Here, Deputy Warden Fode states the purpose of using the DMC is to prevent contraband from entering NDSP through the mail system, while still allowing prisoners to receive personal correspondence. (Doc. 69-2 at 2). Precluding contraband from entering prison is a legitimate penological interest. Weiler, 137 F.3d at 1050; Murphy v. Mo. Supt. of Corr., 372 F.3d 979, 983

8

(8th Cir. 2004) (reemphasizing that "institutional security is 'the most compelling government interest in a prison setting.'") (quoting Goff v. Graves, 362 F.3d 543, 549 (8th Cir. 2004)). The legitimacy of restricting incoming mail to protect prison security "is beyond question." Thornburgh, 490 U.S. at 415. When it comes to institutional security within a prison, courts are highly deferential "to the judgment and expertise of prison officials." Simpson v. Cnty. of Cape Girardeau, Mo., 879 F.3d 273, 281 (8th Cir. 2018).

To survive a constitutional challenge, a rational relationship must exist between the policy and the prison's purpose or goal for adopting it. Id. at 279. Statements by prison officials that a regulation serves the function identified are sufficient when the connection between the two are "logical ones." Beard v. Banks, 548 U.S. 521, 531-32 (2006). Evidence of prior incidents, though helpful, is not required to support a logical relationship because "prison officials may . . . seek to prevent harm that has yet to occur." Simpson, 879 F.3d at 279 (citation omitted). Objective rationality is all that is required to uphold a rational relationship. Id.

Incoming mail is an area seemingly fraught with the potential of introducing contraband into a prison.[5] See id.; Larkin v. Strafford Cnty. Dep't of Corr. Supt. Bracket, No. 19-cv-102, 2020 WL 981289, at *1-2 (D.N.H. Jan. 13, 2020) report and recomm. adopted, 2020 WL 980864 (D.N.H. Feb. 27, 2020) (explaining that after five inmate overdoses, the corrections department implemented policies generally prohibiting inmates from handling and receiving original documents and generally banning delivery of all incoming personal mail to most inmates). Prison administrators have sought to control security risks by adopting various incoming mail procedures.

---

[5] Courts are learning that sometimes paper laced with illicit liquid drugs, like methamphetamine and fentanyl, is mailed to prisoners. See, e.g., Lanear v. Taylor, No. 4:24-cv-629, 2025 WL 3250856, at *1 (E.D. Mo. Nov. 21, 2025). The use of electronic tablets for mail is one preventative mechanism that prisons and jails are employing to prevent this risk. Id.

9

These include postcard-only incoming-mail policies, email-only policies, or providing only photocopies of mail to inmates. Hum. Rts. Def. Ctr. v. Baxter Cnty., Ark., 129 F.4th 498, 504 (8th Cir. 2025) (approving a postcard-only policy for incoming personal mail as reasonably related to prison security and efficiency); Simpson, 879 F.3d at 281-82 (upholding postcard-only incoming-mail policy); Larkin, 2020 WL 981289, at *7-8 (approving email-only policy); Strebe v. Kanode, No. 7:17cv00321, 2018 WL 4473117, at *6-7 (W.D. Va. Sept. 18, 2018) (concluding a policy that limited the number of incoming pages per envelope and required prison staff to photocopy and scan incoming mail was valid under Turner).

More recently, prison administrators have implemented procedures to electronically upload mail onto a prisoner's electronic tablet, with or without using outside vendors to receive the incoming mail. See Lanear v. Taylor, No. 4:24-cv-629, 2025 WL 3250856, at *5 (E.D. Mo. Nov. 21, 2025) (concluding no First Amendment violation was shown regarding jail's policy of providing inmates electronic tablets to view their personal mail, books, religious material, games, music and other materials); House v. Henderson Cnty. Det. Ctr., No. 4:21-cv-038, 2022 WL 4279724, at *3 (W.D. Ky. Sept. 15, 2022) (holding detention center's policy of inspecting legal mail for contraband in the presence of the prisoner and scanning the mail onto an electronic tablet system to be read only by the prisoner did not violate the First Amendment); Chapman v. Henderson Cnty. Det. Ctr., No. 4:21-cv-002, 2022 WL 109211, at *2 (W.D. Ky. Jan. 11, 2022) (same).

The Court concludes NDSP's personal mail policy is logically and rationally related to a legitimate interest in preventing contraband from entering NDSP. So, the remaining Turner factors are considered to determine whether summary judgment is appropriate. To obtain summary judgment, NDSP must show no genuine issues of material disputed fact exist that the policy **meets**

the <u>Turner</u> factors. Glaum has the same obligation to warrant summary judgment in his favor and must show no genuine issues of material disputed fact exist that the policy **fails** the <u>Turner</u> factors.

The second factor is "whether there are alternative means of exercising the right that remain open to prison inmates." <u>Turner</u>, 482 U.S. at 90. "If other avenues are available for the inmate to exercise the asserted right, courts should be particularly conscious of the . . . judicial deference owed to corrections officials." <u>Simpson</u>, 879 F.3d at 280 (citation omitted). NDSP contends the electronic tablet issued to each NDSP inmate is a viable alternative means for prisoners to receive personal correspondence. Glaum objects to having personal information about him and his family placed on the DMC computer system "for all to see." (Doc. 85 at 4-5). He also argues electronic versions of documents from his tablet cannot be submitted as evidence in his court cases and this is why he needs the documents William sends to him. <u>Id.</u> at 9.

The Eighth Circuit recognizes "alternatives to letter writing need not be ideal, they need only be available." <u>Simpson</u>, 879 F.3d at 281. The cases cited above are persuasive that using an electronic tablet to view personal mail and other materials, like email, books, and magazines, does not violate the First Amendment. Though Glaum suspects the DMC system is not secure, there is no evidence to support his speculation, and speculation is not enough to avoid summary judgment.

The Securus tablets, however, do not appear to be an effective means to obtain actual paper records and documents that an inmate may need. Defendants do not explain whether there is a system for inmates to print or have copies made of documents from their tablets. Glaum seemingly contends no such process exists. Deputy Warden Fode frequently, but not always, offered Glaum an opportunity to have misdirected personal mail copied. An inmate's inability to print documents from their tablet appears to be an area where NDSP could improve its policy. But that is a job for prison administrators, not the courts. <u>See</u> <u>Simpson</u>, 879 F.3d at 280 (discussing that deference is

11

owed to correctional officials administering a prison). The Court concludes the second factor is neutral.

The third <u>Turner</u> factor requires a court to consider the impact of accommodating the right on prison staff, fellow inmates, and prisons resources. In other words, what is the "ripple effect" of a proposed accommodation. <u>See id.</u> at 281. Deputy Warden Fode attests that creating an exception for Glaum or ending the DMC policy entirely would be cost prohibitive and damaging to institutional security. (Doc. 69-2 at 2). Though a more detailed explanation would have been helpful, judicial deference is owed to the prison administrators making regulatory decisions. <u>Simpson</u>, 879 F.3d at 281. It is reasonable to conclude that creating an exception or accommodation for an individual inmate, like Glaum, is not good institutional practice. And if accommodation is made for Glaum, other inmates would likely request an exception, too. Glaum is not entitled to special treatment. The Court concludes the third factor weighs in favor of NDSP.

The fourth factor asks whether there are any ready alternatives to the policy that involve no more than a minimal cost. Glaum suggests the prison return to using mailroom staff to process personal mail and argues the mail could be litmus tested for drugs. (Doc. 85 at 5). Glaum also contends NDSP's concern about prohibitive costs is laughable and argues it costs NDSP nothing because the sender pays to have the items mailed and the inmate pays to have copies made or pays to have the items sent out. <u>Id.</u> at 10. Because NDSP charges $.20 per copy, Glaum asserts NDSP is making money by charging inmates.[6]

Having NDSP's mailroom staff individually handle, and litmus test all incoming personal mail would not be a de minimis cost. <u>Simpson</u>, 879 F.3d at 279. As Defendants explain, the entire

---

[6] Glaum also suggests that NDSP adopted the DMC process "so it's easier for State attorneys to view" an inmate's incoming personal mail and achieve an advantage. (<u>E.g.</u> Doc. 85 at 11). The Court does not credit such rank speculation.

mail system would have to be reworked for hundreds of prisoners. (Doc. 69-1 at 16; Doc. 69-2 at 2). The Court may also consider the costs to institutional security as a compelling concern. Simpson, 879 F.3d at 279. Returning to in-house processing does not address the risks that NDSP sought to avoid by using the DMC to process personal mail. In other words, it does not avoid the risk of contraband from entering prison through the mail and it shifts the work and risk of discovering contraband to prison staff. "[T]here is a common sense connection between restricting letter mail and limiting the amount of contraband that enters a jail." Id. Similar to the Eighth Circuit's conclusion in Simpson, this Court concludes "[t]he risk of contraband entering the facility alone is more than a de minimis cost, and returning to a letter mail policy would force [NDSP] to incur that cost." Id. at 282. The fourth Turner factor favors NDSP.

Defendants have shown NDSP's policy requiring incoming personal mail to be sent to the DMC is rationally related to a legitimate government interest. The balance of the remaining Turner factors favors NDSP. Glaum has not shown a genuine issue of disputed material fact regarding any Turner factor that requires resolution by trial, nor has he shown that the undisputed material facts demonstrate the policy fails the Turner standard. Accordingly, Defendants are entitled to summary judgment on this claim.

### 2.    *Outgoing Mail*

Glaum's next claim involves outgoing mail to Rebecca Woodrow, who is the mother of several of Glaum's children. Glaum alleges Defendants did not allow him to send Woodrow correspondence in civil cases between them. Deputy Warden Fode explains NDSP restricted Glaum from mailing correspondence to Woodrow because a permanent no-contact order is in place. (Doc. 69-2 at 3).

Glaum was convicted of two counts of gross sexual imposition of a victim under the age of fifteen. In addition to a sentence of fifty years' imprisonment, Glaum was placed on lifetime probation. Glaum, No. 19-2021-CR-02314, Index #252 (Grand Forks Cnty. Ct. May 12, 2023). The terms of probation, which began immediately upon sentencing, are included in Appendix A to the criminal judgment. See id.; (see also Doc. 69-3). One condition bans Glaum from having any contact with the minor victim and Woodrow, including through "telephone, written, and electronic communication and contact through other people." (Doc. 69-3). Despite the no-contact order, Glaum sent mail directly to Woodrow and used William to serve her with documents in a lawsuit. When Woodrow complained about Glaum's contact, NDSP officials restricted delivery of Glaum's correspondence to her and other residents in her apartment building. (Doc. 69-6 at 1-3, 7-9, 12-13, 15-16, 18-20, 24). According to Deputy Warden Fode, NDSP enforces no-contact orders by monitoring outgoing mail to ensure inmates are complying with court orders and to protect the public from harassment by inmates. (Doc. 69-2 at 3).

Prisoners have a First Amendment right of free speech that includes sending and receiving mail. Hudson v. Palmer, 468 U.S. 517, 547 (1984). Like restrictions on incoming mail, prisons may also impose restrictions on outgoing mail. See Berdella v. Delo, 972 F.2d 204, 209 (8th Cir. 1992). The restrictions on outgoing mail "must be generally necessary to protect a legitimate government interest." Id. (citing Procunier v. Martinez, 416 U.S. 396, 414 (1974)). The Eighth Circuit holds prisons have a legitimate interest in protecting the public from harassment by inmates and prohibiting inmates from sending mail to persons who have affirmatively requested not to receive mail from the inmate. Id.; Finney v. Ark. Bd. of Corr., 505 F.2d 194, 211 (8th Cir. 1974) ("If a person does not wish to receive prisoner mail, he may so notify the prison, and then prison officials may be justified in refusing to send further mail."); see also Hill v. Terrell, 846 F. Supp.2d

14

488, 492 (W.D.N.C. 2012) (concluding defendants did not violate an inmate's constitutional rights when they followed prison policy and prohibited the inmate from mailing letters to individuals who had requested no contact with the inmate).

More particularly, "[p]risons have a legitimate interest in protecting crime victims and their families from the unwanted communications of prisoners when a victim requests that the prison prevent such communication." Samford v. Dretke, 562 F.3d 674, 680 (5th Cir. 2009) (concluding enforcement of "negative mail list" that excluded mail to inmate's minor sons was reasonable and did not violate inmate's First Amendment rights). That interest is even more compelling in cases, like this one, where a no-contact order protects a victim of the inmate's sexual crimes. Liddell v. N.J. Dep't of Corr., No. 12-2669, 2015 WL 6163981, at *5 (D.N.J. Oct. 19, 2015); Mondendo v. Roberts, No. 12-3045, 2013 WL 1087352, at *6-7 (D. Kan. Mar. 14, 2013) (collecting cases).

Glaum claims the state court judge allowed him to contact Woodrow regarding the pending civil suit. Glaum did not provide proof of the alleged state court order in these proceedings. Without evidence, the Court does not credit Glaum's assertions. Reasonover v. St. Louis Cnty, Mo., 447 F.3d 569, 578 (8th Cir. 2006) ("Evidence, not contentions, avoids summary judgment.") (citation omitted); Thomas v. Runyon, 108 F.3d 957, 959 (8th Cir. 1997) ("a nonmoving party seeking to avoid having summary judgment entered against it may not rest on mere allegations or denials but must set forth specific facts sufficient to raise a genuine material issue for trial). Defendants have a legitimate interest in protecting Woodrow and the minor victim from contact by Glaum. The undisputed facts show a state-court imposed condition prohibits Glaum from contacting Woodrow and the minor victim, and Woodrow has requested not to be contacted. The Court, therefore, concludes that defendants have not violated Glaum's First Amendment right to send mail. Defendants are entitled to summary judgment on Glaum's outgoing mail claim.

### B.    Lack of Access to the Courts

Glaum was permitted to proceed with a lack of access to the courts claim insofar as the claim relates to seeking postconviction relief in state court. See Lewis v. Casey, 518 U.S. 343, 354 (1996) (holding a prisoner's lack of access to courts claim is ***limited to*** cases involving "direct appeals from the convictions for which they were incarcerated," "habeas petitions," and "actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'"); see also Zink v. Lombardi, 783 F.3d 1089, 1108 (8th Cir. 2015) ("The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'"). Glaum alleged his ability to obtain the information necessary to bring a postconviction proceeding in state court was impaired by NDSP's policies. (Doc. No. 45 at 4). The Court permitted the claim against Director Colby Braun and Warden Joseph Joyce in their official capacities to obtain prospective, injunctive relief.

The nature of Glaum's lack of access to the courts claim was identified as forward-looking. See Christopher v. Harbury, 536 U.S. 403 (2002). A forward-looking claim is one where the inmate seeks to remove an obstacle that is presently preventing the inmate from litigating one of the types of suits allowed by Lewis. Id. at 413. Those are the cases where "systemic official action frustrates a plaintiff . . . in preparing and filing suits at the present time." Id. In such a situation, the opportunity to litigate "has not been lost for all time . . . but only in the short term;" and "the object of the denial-of-access suit . . . is to place the plaintiff in a position to pursue a separate claim for relief" once the obstacle is removed. Id. The Court allowed this claim to proceed to seek prospective or injunctive relief, but not money damages.

"To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's

16

sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008) (quoting White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007)). The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" Zink, 783 F.3d at 1108 (quoting Lewis, 518 U.S. at 356).

### 1.    *Glaum has appointed counsel for a postconviction challenge*

Here, Glaum filed a state postconviction relief application on August 5, 2025. Glaum v. North Dakota, No. 18-2025-CV-01561, Index #1 (Grand Forks Cnty. Ct. Aug. 5, 2025). This was Glaum's second application after he voluntarily requested to withdraw a postconviction relief application filed on June 17, 2025. See Glaum v. North Dakota, No. 18-2025-CV-01275, Index #5 (Grand Forks Cnty. Ct. June 17, 2025). Defendants argue Glaum cannot demonstrate a lack of access to the courts because he has been appointed counsel in the active postconviction relief case. (Doc. 69-1 at 19).

Eighth Circuit case law supports Defendants' argument. "If a state postconviction court provides a defendant with adequate legal assistance, the right of access to the courts is satisfied." Lamp v. State of Iowa, 122 F.3d 1100, 1105 (8th Cir. 1997) (citing Schrier v. Halford, 60 F.3d 1309 (8th Cir. 1995)). Adequate legal assistance in this context "refers not to the effectiveness of the representation, but to the adequacy of the prisoner's access to his or her court-appointed counsel." Schrier, 60 F.3d at 1314. The focus on access to counsel, rather than effectiveness of counsel, is appropriate because the constitution does not require counsel to be appointed in postconviction matters. Id. at 1313 (citing Coleman v. Thompson, 501 U.S. 722, 752 (1991)).

17

Glaum was appointed two separate attorneys to represent him in the state postconviction relief matter. See Glaum, No. 18-2025-CV-01561, Index #16, #59. Glaum sought to remove one attorney, Kallie Anderson, which was granted, and the other, William Hartl, sought to withdraw, which was also granted.[7] Id. at Index #36, #67, #74. Recently, a third attorney, Christopher Vatava, has been appointed to represent Glum for the hearing currently scheduled on April 27, 2026. Id. at Index #80. Because Glaum has counsel appointed to represent him on postconviction relief, summary judgment is warranted in favor of Defendants.

### 2.    *No actual injury has been shown*

Further, regardless of Glaum's representation status, having appointed counsel in a postconviction matter is just one way of disproving a lack of access to the courts claim. The underlying issue is whether systemic official action has prevented an inmate from preparing and filing for postconviction relief at the present time. See Harbury, 536 U.S. at 413.

Recall this claim was permitted to obtain injunctive relief. "The right of access to the courts is satisfied so long as the State provides the defendant with the 'capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" Lamp, 122 F.3d at 1105 (citation omitted). Glaum has filed for postconviction relief, and a hearing is scheduled. Glaum's access to the courts is not presently denied or impaired. Glaum fails to present any facts showing that Defendants have placed other obstacles in his path.

An inmate cannot prosecute a claim for lack of access to the courts unless he can show he has been deprived of a specific opportunity to advance a viable legal claim in a particular court case. Lewis, 518 U.S. at 351. See also Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (per

---

[7] Glaum argued that Attorney Anderson did not communicate with him and his access to legal assistance from her was impaired. (Doc. 85, p. 37). He did not raise any issues with Attorney Hartl's representation.

curiam) ("[w]hen bringing an access-to-courts claim . . . the plaintiff must show the lack of a library or the attorney's inadequacies hindered the plaintiff's efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights") (citations omitted). To survive summary judgment on a claim for denial of access to the courts, a prisoner must present some specific evidence that will satisfy the "actual injury" requirement of Lewis. Dale v. Brott, No. 12-cv-383, 2013 WL 12074952, at *8-9 (D. Minn. July 23, 2013), report and recommend. adopted, 2013 WL 12074953 (D. Minn. Sept. 5, 2013), aff'd, 562 F. App'x 551 (8th Cir. 2014).

Glaum has not shown any actual injury. He has filed a postconviction relief application that is pending in state court. Glaum fails to identify a present specific injury relating to the postconviction relief action. Injuries that are merely speculative, in other words, injuries that might be avoidable in the future are not sufficient. Hartsfield, 511 F.3d at 833 (holding an access to the courts claim is not actionable if "alleged injuries are merely speculative"). Accordingly, Glaum has suffered no actual injury caused by Defendants that presently warrants preventative or injunctive relief on the claim for lack of access to the courts.

### C.    Injunctive Relief

Under Ex Parte Young, 209 U.S. 123 (1908), a party may sue a state officer for prospective relief to stop an ongoing violation of a federal right. See Entergy, Arkansas, Inc. v. Nebraska, 210 F.3d 887, 897 (8th Cir. 2000) (observing that injunctive relief remains available against continuing violations of federal law) (citing Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269 (1997)).

To warrant injunctive relief, a plaintiff must show their constitutional rights have been violated and there is a cognizable danger of a future violation that is more than a mere possibility. Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982). A restraining order or injunction is an

extraordinary remedy that "must be tailored to remedy specific harm shown." Id. The Eighth Circuit Court of Appeals has long recognized that district courts should not interfere with prison administration using injunctions "unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." Id. In other words, "for an injunction to issue a right must be violated and . . . the court must determine whether a cognizable danger of [a] future violation exists[,] and that danger must be more than a mere possibility." Goff v. Harper, 60 F.3d 518, 520–21 (8th Cir. 1995) (internal quotations omitted).

Glaum has the burden to show an injunction is necessary and warranted. See Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). Glaum has failed to present evidence raising a genuine issue of material fact on his substantive claims. Glaum's First Amendment rights have not been violated by NDSP's mail policies. There is no showing of a current violation of his right to access the courts, nor has he shown a threat that is both real and immediate. Accordingly, the Court heeds the Eighth Circuit court of Appeal's warning to proceed cautiously when asked to interfere with the management of prisons through issuing injunctions and denies Glaum injunctive relief. See Goff, 60 F.3d at 520–21.

## IV.    CONCLUSION

The Court has carefully reviewed the pleadings and motions of both parties. Glaum has not raised a genuine issue of disputed material facts demonstrating his constitutional right to the free flow of mail was or is currently being violated. Nor has Glaum raised a triable issue of fact regarding his lack of access to the courts claim. Because Glaum has a postconviction relief action currently pending in state court, injunctive relief is not currently warranted on the claim for lack of access to the courts. Therefore, Defendants' Motion for Summary Judgment (Doc. 69) is **GRANTED**, and Glaum's Motion for Summary Judgment (Doc. 75) is **DENIED**.

20

Because any appeal would be frivolous and could not be taken in good faith, the Court further **ORDERS** that any appeal may not be taken in forma pauperis.

**IT IS SO ORDERED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 31st day of March, 2026.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court